UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARCUS LEWIS,

        Plaintiff,

v.

MICHELLE LAJOYE-YOUNG,

        Defendant.
_____/

Case No. 1:23-cv-1072

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.**     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The

events about which Plaintiff complains, however, occurred during Plaintiff's arrest in Kent County, Michigan, as well as during Plaintiff's incarceration at the Kent County Correctional Facility (KCCF). Kent County Sheriff Michelle LaJoye-Young is the only individual named as a Defendant in the caption of Plaintiff's complaint. (ECF No. 1, PageID.1.) An attachment to Plaintiff's complaint, however, suggests that Plaintiff also intends to proceed against a Correctional Officer Chavalier. (ECF No. 1-2, PageID.11.)

Plaintiff alleges that on July 28, 2018, he drove his girlfriend's SUV "to a party store to meet an associate by way of receiving a pair of Versace [s]unglasses." (ECF No. 1, PageID.1.) When Plaintiff left the store, he was pulled over by an officer. (*Id.*) Plaintiff asked the officer why he was pulled over, and the officer told Plaintiff that he had failed to use his turn signal. (*Id.*) Plaintiff responded that the officer must be mistaken because Plaintiff always uses his signal. (*Id.*) According to Plaintiff, the officer then "came clean and admitted that the stop wasn't about a signal, [and said,] [']sit tight, and I'll explain more in a little while, but for now, give me your [c]ell [p]hone and your keys out of the ignition.[']" (*Id.*, PageID1–2.) Plaintiff was also directed to provide his license. (*Id.*, PageID.2.)

Five minutes later, five or more squad cars, as well as the K-9 unit, pulled up. (*Id.*) A second officer approached Plaintiff and asked Plaintiff if he had given his associate any crack cocaine or heroin. (*Id.*) Plaintiff was "shocked" because he did not have any drugs on him. (*Id.*) Plaintiff avers that he also did not have any outstanding warrants. (*Id.*) According to Plaintiff, the officers ran his information and learned that Plaintiff had a prior arrest for cocaine. (*Id.*)

Plaintiff alleges that he was then "viciously snatched out of [his] vehicle" and slammed to the pavement by a deputy. (*Id.*) Plaintiff was placed in a straitjacket and a "chain with straps on it." (*Id.*) He alleges that he was then choked and beaten by multiple deputies. (*Id.*) Plaintiff "tried

yelling and screaming for them to stop" to no avail. (*Id.*) He alleges that he "even tried playing dead in hopes that would deter them; it did no good." (*Id.*) The deputies placed a spit bag over Plaintiff's head and told him, while laughing, that it "would be over in a moment." (*Id.*)

Plaintiff then heard a female voice "asking what in the hell is going on?" (*Id.*) Plaintiff later learned that this individual was a nurse named Robyn. (*Id.*, PageID.3.) She told the deputies to take the bag off of Plaintiff's head; they "laughed" and said they "were only playing." (*Id.*) Nurse Robyn asked Plaintiff if "he was okay," and he responded that he was not, because his nose was bleeding so heavily that he got blood all over his clothes. (*Id.*)

According to Plaintiff, once the deputies "realized the true gravity of what they had done," they started saying that Plaintiff was hysterical and suicidal. (*Id.*) Plaintiff was strapped in a chair "within the mental ward hospital" where he remained for about 12 hours. (*Id.*) Plaintiff alleges that officers placed food on the table in the room and told him that the only way he would be eating was to "get to the food the best way [he] could." (*Id.*) Plaintiff's request to use the bathroom was also denied, and he "ended up urinating all over [himself], which seem[ed] to amuse them all." (*Id.*) Eventually, Sergeant Plowman removed Plaintiff from the chair and allowed him to take a shower. (*Id.*) Plaintiff was given clean clothes and time to make a call to his family. (*Id.*) He was placed in general population, where he was "constantly teased by" Deputy Cavalier. (*Id.*)

Plaintiff alleges further that in January 2019, he was rushed to the hospital because the left side of his face was paralyzed. (*Id.*) He claims that he was diagnosed with Bell's palsy, which he later learned was "outspread" in the KCCF. (*Id.*) Plaintiff avers that he was unable to close the left side of his mouth because of the palsy. (*Id.*)

Based on the foregoing, Plaintiff asserts that he is raising claims for "[p]olice [b]rutality" and deliberate indifference under the Eighth Amendment. (*Id.*, PageID.4.) The Eighth

Amendment, however, applies to convicted prisoners. *See Wilkins v. Gaddy*, 559 U.S. 34, 37–39 (2010). Because Plaintiff's complaint alleges facts suggesting that the uses of force occurred during his arrest, the Court construes his complaint to assert a Fourth Amendment excessive force claim.[1] *See Graham v. Conner*, 490 U.S. 386, 395 (1989) (noting that the Fourth Amendment protects against the use of excessive force against someone "in the course of an arrest, investigatory stop, or other 'seizure'"); *Colson v. City of Alcoa, Tenn.*, 37 F.4th 1182, 1187 (6th Cir. 2022) (noting that Fourth Amendment protections apply for "one who has been arrested but has not yet received a judicial determination of probable cause, either through an arrest warrant or a post-arrest probable cause hearing") (citing *Aldini v. Johnson*, 690 F.3d 858, 866 (6th Cir. 2010))). Plaintiff also appears to assert a claim that he was "arrested under false pretenses." (ECF No. 1, PageID.1.) Finally, the Court construes Plaintiff's complaint to assert constitutional claims premised upon Deputy Cavalier's constant teasing.[2] Plaintiff seeks compensatory and punitive damages. (ECF No. 1-2, PageID.12.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

---

[1] Although Plaintiff's complaint suggests that force was used against him at the KCCF when he was placed in the restraint chair, nothing in the complaint suggests that Plaintiff had received a post-arrest probable cause hearing at that time. Moreover, Plaintiff suggests that he was not arrested pursuant to an arrest warrant. Rather, the facts alleged by Plaintiff suggest he was placed in the restraint chair immediately upon arrival at the KCCF.

[2] To the extent Plaintiff intended to raise any constitutional claims related to his Bell's palsy diagnosis, he fails to name any individuals who were involved in his medical treatment during his confinement at the KCCF and, therefore, fails to state a claim for relief. Moreover, any such claims appear to be untimely for the same reasons provided *infra* regarding Plaintiff's Fourth Amendment excessive force claim.

4

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      A.    **Claims Against Defendant LaJoye-Young**

As noted above, Kent County Sheriff Michelle LaJoye-Young is the only individual Plaintiff has named as a Defendant in the caption of his complaint. (ECF No. 1, PageID.1.)

Plaintiff, however, fails to mention LaJoye-Young in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Because Plaintiff's claims against LaJoye-Young fall far short of the minimal pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Plaintiff's complaint must be dismissed against her.

Moreover, it appears that Plaintiff may have named LaJoye-Young as a Defendant because of her position as Kent County Sheriff. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir.

2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendant LaJoye-Young encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant LaJoye-Young was personally involved in the alleged violations of Plaintiff's constitutional rights. For that reason as well, Plaintiff's claims against Defendant LaJoye-Young are subject to dismissal.

B.     **Excessive Force Claims**

As noted above, the Court has construed Plaintiff's complaint to assert an excessive force claim under the Fourth Amendment. The right to make an arrest or investigatory stop has long been recognized to permit "some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 394 (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)). Determining whether the force used in a seizure was "reasonable" within the meaning of the Fourth Amendment requires consideration of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 138 (1978)). Moreover, the reasonableness of the force must be judged from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Id.* at 396.

Here, Plaintiff's Fourth Amendment excessive force claim is clearly untimely. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). The statute of limitations for Plaintiff's excessive force claim began to run on July 28, 2018, on the date that the use of force occurred. Plaintiff did not initiate this suit until October 10, 2023, well more than three years after July of 2018. Plaintiff also provides no basis for tolling of the statute of limitations. For

8

that reason alone, Plaintiff's Fourth Amendment excessive force claim will be dismissed as untimely.

      C.      **"Arrested Under False Pretenses"**

The Court has also construed Plaintiff's complaint to assert constitutional claims premised upon his assertion that he was arrested under false pretenses. The Fourth Amendment provides, in relevant part, that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A § 1983 claim for wrongful arrest also turns on whether the officer had probable cause under the Fourth Amendment. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579–80 (6th Cir. 2003) (noting that "any arrest without probable cause violates the Fourth Amendment"). According to the MDOC's Offender Tracking Information System, Plaintiff is serving sentences imposed in 2019 after he was convicted by a jury of controlled substances offenses that occurred on July 28 and 29, 2018. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=421256 (last visited Nov. 2, 2023).

Any Fourth Amendment claim premised upon lack of probable cause or unlawful arrest is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that an individual cannot assert a cognizable claim for damages under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless he or she shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87 (footnote omitted); *see also Wallace v. Kato*, 549 U.S. 384, 393 (2007) (recognizing that *Heck* bars the pursuit of a Fourth Amendment arrest

9

claim until the conviction is overturned, but concluding that the action accrues at the time of the arrest).

Here, a finding that any of the officers involved in Plaintiff's arrest lacked probable cause to detain and arrest him would imply that Plaintiff's convictions and sentences are invalid. Plaintiff's unlawful arrest claim is, therefore, barred by *Heck*. *See Schreiber v. Moe*, 445 F. Supp. 2d 799, 812–13 (W.D. Mich. 2006) (concluding that a finding that an officer lacked probable cause to arrest the plaintiff would imply the invalidity of his misdemeanor conviction and, therefore, was barred by *Heck*), *reversed in part on other grounds by Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010); *see also Barton v. Priest*, No. 05–73415, 2008 WL 4372637, at *4 (E.D. Mich. Sept. 19, 2008) (finding plaintiff's false arrest and illegal imprisonment claims were barred by *Heck*). Plaintiff's Fourth Amendment lack of probable cause/unlawful arrest claim is, therefore, barred by *Heck* until his convictions have been invalidated.[3]

A court's dismissal of a claim on the basis that it is barred by *Heck v. Humphrey* is properly considered a dismissal for failure to state a claim on which relief can be granted. *See Hunt v. Michigan*, 482 F. App'x 20, 22 (6th Cir. 2012) (holding that a claim barred by *Heck* is properly dismissed for failure to state a claim); *Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004) (same). However, the dismissal of any Fourth Amendment lack of probable cause/unlawful arrest claim will be without prejudice. *See Sampson v. Garrett*, 917 F.3d 880, 882–83 (6th Cir. 2019) (citing *Taylor v. First Am. Bank-Wayne*, 973 F.2d 1284, 1289 (6th Cir. 1992)).

---

[3] As noted above, Plaintiff's excessive force claims are untimely. The Court notes, however, that if Plaintiff's excessive force claims were not untimely, they would not necessarily be barred by *Heck*. An excessive force claim may conflict with a prior conviction when (1) "the criminal provision makes the lack of excessive force an element of the crime," or (2) "excessive force is an affirmative defense to the crime." *Schreiber*, 596 F.3d at 334. Certainly, these elements would not be present for Plaintiff's controlled substances convictions.

### D. Claims Against Deputy Cavalier

Although Plaintiff has not named Deputy Cavalier as a Defendant in the caption of his complaint, it appears that he intends to assert constitutional claims against him. However, Plaintiff's only mention of Deputy Cavalier is that he "constantly teased" Plaintiff after Plaintiff was placed in general population at the KCCF. (ECF No. 1, PageID.3.)

Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citations omitted). The application of the proper constitutional right depends on the nature of Plaintiff's detention: the Eighth Amendment applies to convicted prisoners and the Fourteenth Amendment applies to pretrial detainees. *Id.* (citations omitted). Here, Plaintiff does not specify the nature of his custody when he was subjected to constant teasing by Deputy Cavalier.

While unprofessional, Plaintiff fails to allege any facts to suggest that the alleged teasing by Deputy Cavalier rose to the level of a constitutional violation under either the Eighth Amendment or the Fourteenth Amendment. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam); *see also Jones v. Porter,* No. 99–1326, 2000 WL 572059, at *2 (6th Cir. May 1, 2000) (concluding that "Jones's Fourteenth Amendment equal protection claim is without merit, as a prison official's verbal harassment or idle threats do not rise to a constitutional level"); *Clark v. Turner,* No. 96–3265, 1996 WL 721798, at *2 (6th Cir. Dec.13, 1996) (stating that "[v]erbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's

constitutional rights"). Accordingly, any intended claim against Deputy Cavalier premised upon verbal harassment and teasing will be dismissed.[4]

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   November 8, 2023           /s/ Robert J. Jonker
                                    Robert J. Jonker
                                    United States District Judge

---

[4] Plaintiff's complaint suggests that the teasing began in 2018, but the complaint is devoid of facts suggesting when the alleged teasing ended or when Plaintiff was transferred from the KCCF into the custody of the MDOC. Thus, while it is possible that any intended verbal harassment claim against Deputy Cavalier is untimely, the Court cannot conclusively determine that from the face of Plaintiff's complaint.